So we'll call our first case. It's 24-2944 and 24-3149. The United States v. Edwards and Moore. Ms. Roberts. May it please the court, Julie Roberts for appellants Jeremiah Edwards and Alonzo Moore. I'd like to request three minutes for rebuttal. Section 3161 H1D excludes from the speedy trial clock delay resulting from a pretrial motion from the filing of the motion through a hearing on that motion. Statutory. Just to start out, is there any meaningful difference between these two consolidated cases that we should know from the outset you are going to speak to or can we really regard what you're about to say is applicable to both cases with minor differences? The legal analysis is the same for both cases, your honor. So the statutory text and context makes clear. Let me ask this. Let's assume that at least some of us thought that these hearings, excuse me, were a total unadulterated sham, pretextual, with no substance intended at all. What do we do about that? I mean, how? We can't prove it was a sham. One of them, quote, evidence, if you will, was introduced. I mean, if anything, the evidence may have been a sham, but something was introduced. And the judge made it sound like he needed this to consider the evolving area of the law. What do we do? What can a court of appeals do? We can't find facts. There's no basis for us to conclude it's a sham or pretextual. May I ask what maybe there is? But what do we do, number one? Number two, if it were to conclude that D does not apply, section H1D does not apply, and send it back, we have to address the prejudice versus non-prejudice dismissal, if we were to order it everyman. And what is there, given the mindset that the judge would have had if it were a sham, what is there to suggest that a dismissal without prejudice would do anything? Let's assume we let the district court decide prejudice versus non-prejudice. What good would that do? Well, in this case, when the hearing scheduled is pretextual, subsection D does not operate to toll the clock. And so this court... How do we know it's pretextual? How can we come to the conclusion that the district judge is calling it for a hearing, understanding neither party asked for this hearing, right? That's right. District judge realized, oh, we got a problem with the speedy trial clock. I'm going to call a hearing. How do we determine that's pretextual? So I would ask the court to look at a range of factors. And this is... We have some guidance from other circuit courts that have looked at this issue. And I think some of the... We have to look at the circumstances surrounding the scheduling of the hearing. And so here, there was an idle docket for six months after the filing of fully... You're asking us to make a finding or findings as to the district court's state of mind, aren't you? And that kind of intentionality is either made as a finding based upon a statement or based upon something that is tacit or has surrounding circumstances. Now, I've known your office and deeply respected it for many years, many years. In fact, you may not have even been around when I joined the Western District. But let me say this. I have never seen from your office, and this is not intended as a criticism, the use of the words sham, hearing, mere pretense, a naked attempt to trigger the more generous pre-trial motion exclusion. Knowing your office as I have, I concluded as I read the briefs that these words were not invoked casually. In fact, knowing the team effort that your office always engages in any important case, that this was discussed and vetted and reviewed. So why use those words? And as my two colleagues have asked, having used them, how do we go about drawing an inference that would justify a finding of a sham or of a naked attempt to trigger something or of a mere pretense? As the Third Circuit explained in Williams and in Hamilton, the court in reviewing the district court's actions has to look at how the court interpreted and applied the Speedy Trial Act. So in that context, we need to look back at all of the factors surrounding the scheduling of the hearing. And I think we can look at the evidence of pretext and then also look at the district court's usual practice. What's the evidence of pretext? So the evidence of pretext here is that the docket was idle for six months on fully ripe, fully briefed motions where neither party requested a hearing. The hearing was only scheduled in response to the assertion of the Speedy Trial. Who knew it was in response to that? It was scheduled the next day, your honor. You folks filed a motion on April 11th, right? That's right. 24. The judge scheduled the hearings on April 12th. That's right. The next day. And so when confronted with the Speedy Trial violation, rather than dismissing the indictment as directed by the Speedy Trial Act, the district court judge scheduled a hearing, not in an effort to resolve the motions, but in an effort to obtain the excludable time under subsection D. That, of course, is your conclusion reached from what I think we could fairly say is the circumstantial evidence surrounding the act of scheduling. But what do you say to the written justification or spoken justification from Judge Sircone relative to the substantive, the constitutional issue involved in the motion to dismiss? That is that this is a very dynamic area of constitutional law right now. It has been changing. And in fact, I would be prepared to take judicial notice if I were a district judge of comments made by district judges and court of appeals judges all over the country wishing, will the Supreme Court please resolve this? Right? I mean, may well be experiencing the same thing as counsel. So why should we not have some sympathy for the district court on those grounds? Certainly the Second Amendment motions are complex, but they're routine. And if we look at the judge's denial of the Second Amendment motions in both these cases, they're materially indistinguishable from prior opinions issued by the same judge on the same type of motions. Had there been other situations before this same judge of a similar nature? Unfortunately, yes. And so with this district court. Yes. And that's why dismissal with prejudice is necessary here. If hearing under subsection D includes pre-textual hearings, it necessarily creates a situation that raises serious Sixth Amendment concerns. Because any time a pre-trial motion would be filed for any pre-trial motion, even if the parties don't request a hearing, for at any time, for no genuine reason, a court could schedule a hearing and under the government's construction of the statute, that would be sufficient to toll time under subsection D. Are you aware of any circuit court finding that these hearings were a shame? In the court in Owens and in other circuits have contemplated that a pre-textual hearing would not count as a hearing under subsection D. But that's all they've done, isn't it? You're familiar with the Stala case, I think. I believe you. With the what? The Stala, S-T-A-U-L-A. It's from the First Circuit and it's the one, you may recall the term, where the judge wrote that they were not about to allow anyone to, a district court in particular, to jerry-build a hearing. And I presume that that's what you're essentially saying has happened here. But they didn't go much farther than say, we're not going to allow this to happen. Can you provide us with some direction or even a specific proposal for a rule that would allow us to say, enough, this ain't proper? And I think the court in Owens contemplated the rule. And the rule that we're asking to be applied here is that a pre-textual hearing is not a hearing as defined by subsection D. How do we define a pre-textual hearing? What kind of parameters can we, if you were writing the opinion, how would you define a pre-textual hearing? You play the judge, we play it all the time. So I think the factors that help us kind of identify whether or not a hearing is pre-textual is what is kind of the evidence around the scheduling of the hearing. So here it's the dockets were idle, the motions were fully ripe. And then the timing of the scheduling of the hearing the next day. In fact, there was a consecutive timing of hearings, right? In the two cases? Mr. Edwards' hearing was held on May 1st and Mr. Moore's hearing was on May 3rd. And then the judge issued his decision just two days after the hearing in Mr. Edwards' case. And neither party asked for a hearing, correct? Neither party asked for a hearing. And I think that can be part of the court's analysis of is this pre-text. If the parties request a hearing, we can stop, right? We're in subsection D. Everyone's on the same page. But the problem here is when the parties fully briefed motions, they're fully ripe, everyone's under the impression that we're under subsection H, right? Because the motions are actually under advisement. The court has everything it needs to dispose of the motions. The delay here was not resulting from the court being consumed with time to get the information it needed to decide the motions. The delay was resulting from the court's oversight and the government's negligence in bringing both of these gentlemen to trial. So in terms of the factors that were... How was the government negligent? So the government's duty is to bring folks to trial, right? That's exactly a point that I wanted to ask your friend on the other side about because I've looked and I haven't found much. But I'd like to know what duty there is on the part of the prosecution at least to alert the court to what seems to be an imminent violation of the Speedy Trial Act. That's right. And the duty falls on the government. The defendant is not required to bring himself to trial. This duty falls with the government and they neglect it. There's also, as to one of them, a lot of excludable time triggered by defense motions. An awful lot of excludable time. To what extent should we factor that into our calculus at all? Absolutely. The delay that is... Results from motions the defense has filed. The delay for the pre-trial, the preparation of pre-trial motions is excluded from the speedy trial clock. So that's not even time that elapsed in terms of non-excludable days. But to what extent is that something that we should consider if we get to the second part of the equation in terms of prejudice versus non-prejudicial dismissal, the amount of time that results from, in the legitimacy of it, defense requests for more time? Sure. And there were extensions for pre-trial motions here. But when you're preparing the pre-trial motions, it's not idle, right? Trial counsel's investigating, they're researching, they're communicating with their client. The client understands that the delay is because of a certain objective. Would you concede that there is present in this issue of speedy trial act compliance or non-compliance, also the presence of an issue that is the docket control that is reposed, the responsibility for docket control that is reposed in a district judge? Something about which we give considerable deference and have expressly said from time to time, we won't interfere with. What's your response to that? Certainly district court judges need discretion, but the Speedy Trial Act is about balance, right? That's the purpose of the act is balancing the defendant's right to a speedy trial with the need for efficient management of courts and the court's time and the court's docket. So we need to take that into consideration, of course. But with that said, the speedy trial clock allows for a district court judge to grant more time under the ends of justice continuance. And so in a situation like this, where you have motions where no hearing's required, the motions are ripe, fully briefed, ready for decision, they are actually under advisement. If the judge feels that this issue is so complex that he needs more time, the Speedy Trial Act has a provision for that. But the judge did not enter an ends of justice continuance here. And if he had, the parties would have been on notice. Clients would have had the autonomy to decide, do they want to wait for the delay for this potential hearing, or do they want to give up their pre-trial motion because they want to get out of pre-trial detention? And in fact, and I'll be interested to hear what your friend on the other side has to say about this, but the problem that we have in this case is essentially the problem that was discussed in Henderson in the legislative history of the STA, granted that what the Senate report, and I think some House discussion as well, went to was the ends of justice exception delay being used. But delay is still delay. So this problem of exceptions being used for purposes of delay was something that was recognized at the time that the STA was passed. That's right. And in the legislative history, there's strong language that subsection D is not meant to swallow the rule. Subsection D could be subject to abuse because it is so open-ended. And that's what the Supreme Court explored in Henderson. And so that's why, because subsection D could be used to abuse the Speedy Trial Act, that we must read hearing narrowly. It cannot mean any hearing. It cannot mean that a judge could set a hearing on a pre-trial motion at any time and say, I'm setting this hearing to invoke subsection D. And that's sufficient. More fundamentally than that, the concept of a hearing suggests something, that a hearing that is merely a sham is not a hearing. The hearing, in order to have a hearing that satisfies any realistic concept of what a hearing is, there has to be a process by which an objective fact finder is trying to make certain factual determinations based upon stuff which is presented during the course of the court hearing. If that's not what's going on, if it's just a CYA process, that's not a hearing. That's right, Your Honor. And this court in Adams addressed a different type of motion. But it talked about how the court, once it receives all of the papers, it reasonably expects that it has the information needed to decide the motion. And here, the court had all of the information it reasonably expected to receive. In Mr. Edwards' case, there was a sir response and a sir reply. And the parties were all on the same page, that this motion can be resolved on the briefing alone. And I assume that you would agree that a hearing need not be an evidentiary hearing. That's correct, Your Honor. In fact, Scala, which I've already referred to, I think said just that or suggested just that. In fact, it said, the courts there said the First Circuit hearing is any on-the-record colloquy in which the district court hears the arguments of counsel and considers those arguments prior to deciding the pending motion. That's right, Your Honor. And I think where we have to go back to the purpose of the Speedy Trial Act and the context of subsection D within the Speedy Trial Act is that if it can't be that any hearing or any oral argument is enough to trigger subsection D, because that could happen in any case. For any pretrial motion, a judge could come up with reasons why they would want argument, and they should have discretion to do that. But that discretion has to be balanced with the defendant's right to a speedy trial. And that balance did not happen here. All that happened was that the hearing was scheduled as a pretense to invoke subsection D. I say it has to be, whether it's an evidentiary hearing or simply a legal argument, it has got to be scheduled in good faith. That's right, Your Honor. It needs to be scheduled in good faith, and this court can look at the circumstances surrounding the scheduling of the hearing to help determine whether this was pretextual and whether this is consistent with judge's usual practice for these types of motions. And the totality of the circumstances will help us understand what was the judge's intent in setting the hearing. Thank you very much. We'll see you on rebuttal. Thank you. Good afternoon, Ms. Irwin. Good afternoon, Your Honors. Laura Irwin from the U.S. Attorney's Office on behalf of the United States. I'm happy to start with the court's first questions to my opponent about what does this hearing, what does this decision look like, and what do we look at, and how do we formulate a decision. But if I could, I'd like to take the court back to what I think is really the first decision point for the court, which is, what does Henderson tell us about whether this can happen or not? The briefing submitted by you... It tells us that we should be worried about how the statute can be abused. And it does that by citing specific legislative history, doesn't it? There are concerns about abuse, there's no doubt about it. In Henderson, that are cited back to what the Senate report said in the House. Correct. And as they said in Henderson, Congress itself said this can be left to Board of Judges to devise local rules.  Circuit rulemaking, Congress could make a new statute, they could augment the Speedy Trial Act. But my concern is, is the briefing was framed as, you know, we heard the word sham and things of that nature, but also that it was a required hearing. And if you go back to Henderson, Henderson used the word required, but not in the way that allows this court to go ahead and decide to create a sham exception. You would agree, I assume, that a hearing does not imply or need it be an evidentiary hearing? Without a doubt. It could be a legal argument, no doubt. Thank you. But the Supreme Court in Henderson held on page 330, we instead hold that Congress intended subsection F, which is now D, to exclude from the Speedy Trial Act 70-day limitation all time between the filing of a motion and the conclusion of a hearing on that motion, whether or not a delay in holding that hearing is reasonably necessary. The discussion of a required hearing, which is what defendants seem to be arguing, is this was not a required hearing because it turns out to have been a sham, comes from earlier on page 330 when the court is addressing the argument made by the petitioners there that the prompt disposition provision really is what allowed them to get this reasonable language into the Speedy Trial Act. And that's where the Supreme Court said subsection F is written in the disjunctive. So you have situations in which there's a required hearing, in which there is not a required hearing. And when there's not a required hearing, that's when you pull in subsection H. Let me be blunt, if I may. Isn't there something about the timing in both of these cases, these two cases together, being called for hearing, being listed for hearing right about the same time as these time periods are about to run or have already run for considerable periods of time? I have several answers to that, Judge Smith. Let me just first say- I understand that you're, like my legal argument that I'm trying to make about Henderson not providing a legal basis for this to happen because they, and I can elaborate on this, but I want to answer your question. The test that the appellants are asking this court to apply and devise and endorse is one where you look to the intent and motivation of the district judge. And the only way that that can be evaluated is by ascribing the most negative intent, the most negative motivation on the part of the district court judge. And I'm sure you also agree that we have been extremely hesitant to interfere in matters that we consider to be docket control. So I assume therefore that you would consider the kinds of factual issues presented in this case as essentially being at least partly docket control related. Exactly. But to specifically answer your question, what do we make of the timing of that? Isn't it also reasonably possible that when the district judge got this motion, two things happened. One, the inference that because the docket showed no activity meant that the court was ignoring the motion is possibly not true, right? Who among us would want a docket with no activity to be drawn from the conclusion that the court's just ignoring this case, right? But that's the inference they ask you to draw. It's been ignored and that that's the only thing that made the court look at this case. Is that fair? I mean, it is possible that umpteen other things were before this district judge that occupied his attention and time. Not that he was ignoring it, but that nothing had been done with the motion because of attention being given elsewhere. And that's possible, but what the appellants are asking you to do is ascribe the worst possible inference to the district judge. That is ascribing what you call the worst possible conclusion to the act of calling the hearing. Right. I'm saying that I don't understand them to be saying at least only that, but they also have said nothing about the fact that there may be other matters to which this judge in good faith is devoting time. Exactly. I'm sorry to be so aggressive about this, but I feel that the district court could have said to itself, hey, we have this motion dismissed based on the second amendment. This is a remarkable, as he called it, remarkable area of the law. It's changing daily. The context, the decisions we have to make, the postures of the positions of the parties. I thought that's what this guy was all about. He was asserting his second amendment right. But now I've got this sixth amendment motion. It looks like he's not so concerned about that. He just wants me to decide. Because keep in mind, he's entitled to a decision. Is the government at all troubled by the scenario that took place here? Your honor, if this is the standard we use. No, that's another question. Is the government at all troubled by what happened here? I think there's reasonable explanations as to all the things that happened here. Still, the question is real simple. Is the government troubled at all by what happened in these two cases? I can't say that there's not a slight percentage of that. But it's not enough for this court. All right, so put some percentage on it for me. Two percent. That's it? Two percent. Two percent trouble on these facts. We have DACA control. Your honor, this is a judge who's been on the bench for 22 years. And the appellants are asking you to draw these negative inferences based on three cases. Well, no. Stop right there, please. Because I was going to ask you this. And again, this is in the realm of bluntness. And you're in a tough position. You're both in a tough position here. It's not easy to be suggesting something that suggests that a judge acted in a way other than that which would be within the realm of complete propriety. I'll put it that way. But when I asked Ms. Roberts if there were other instances in which this particular judge had perhaps acted in the same way or not acted, she didn't hesitate when she indicated affirmatively that there had been other instances. Are you not aware of other instances of some, I won't say dereliction of duty, say lateness, not acting on a timely basis? I assume she was referring to these two cases in the Noble case, which is the district court decision. She can correct me. I assume she has the time on rebuttal. So she can correct me if I drew an inaccurate conclusion. But it remains reiterating that we are drawing a very, very small subset of cases by looking at those three cases. And then perhaps a larger one when we look at Second Amendment cases to say, this is how they're routinely done. Defendants aren't widgets. These cases aren't widgets. Well, they'd be happy to say when you're talking about a very small subset that to them, it is a big deal that they're a very small subset. They only care about their cases, not a larger subset. Right. But they're challenging an Article III judge and attributing to that person the negative intent or the intent to violate federal law. And I don't think that the record bears that. They keep referring to evidence. But there is no evidence. It's their- I don't say violate federal law, it's manipulate. I'm sorry? We say violate federal law. It's manipulate the law to achieve a particular outcome, scheduling a hearing for the sole purpose of beating the Defendant's Speedy Trial Act motion. I'm not sure you'd say violating the law. Well, when I read intent, I guess I'm trained to think that it- Bad faith, as I said to Ms. Roberts, you're alleging bad faith. To your point, Your Honor, appellants don't want to talk about any of the reasons that were put on the record by the district judge here as to why he- Well, let's look at those reasons. Because I have two other cases, United States v. Collier, that the judge decided he signed the opinion November 8, 2023, I think before either of these cases. The other case, U.S. v. Harris, that he signed March 26, 2024, same issue in terms of the range issue and all the complications of flowing from range. No hearing. No hearing. Just decided on the record. By the way, the two opinions are identical. I mean, you take Opinion A, take out the names and put in the names of Defendant B, you get Opinion B. They're absolutely identical. The paragraphing, everything is identical. Two responses to that, Your Honor. Again, each defendant is treated individually. Well, apparently not because Collier and Harris got exactly the same opinion. Well, in the extent that the court can decide wherever it is in its process of adjudicating in its mind, I mean, what we're asking, what the appellants are asking is that we crawl inside the mind of a district judge and say to that person, you have to tell us exactly what your thinking was at each step. If your docket isn't active, that means you're ignoring the case. If you say you held a hearing because you're interested in it, is that enough? If you say, I wanted to have this hearing. Could he have entered a continuance, I can't remember the exact language of the rule. Under A7, Ends of Justice? Yeah. I think that would read Section C out of existence. He said he needed more time. Why couldn't he do that? Well, for two things. One is that would read Section D out of existence. And also, there's no obligation on the court. That is, I think, in good faith it wouldn't be Section D out of existence. It's still there. But the rules allow for, the statute provides for a situation where the judge simply needs more time to decide because of all the reasons that you've postulated and my colleagues have postulated. I don't know of any authority that requires a district judge to invoke that rule. Our position is that it's something that was available to him, but he was not required to follow it because he believed he was acting under Section D. But as soon as he conducted these hearings, I think one transcript, the transcript of one, as I recall, was maybe seven pages long. 20 minutes. Read that as it may. He very quickly was able to issue an opinion in the matter, wasn't he? It was only a few days, Your Honor. But who are we to sit back and say how a court should manage its chambers and decide which cases get on top of the file first rather than second? I think we're just, this individual, like looking at the intent of the judge, I think is very difficult to administer, very difficult to extrapolate the information. And it puts, so how would the judge do this? Like, if he's stating on the record, as he did in this case, the reasons why he felt that this was important, the administration of justice, due process, range, I'm constantly learning, that type of thing. How do we test that? I mean, the inference that appellants are asking you to draw is that is all incorrect. Do you have any rule to suggest for us here? Or do each of these situations need to be decided on their own facts, on their own procedural postures? I do have one that I could share with you. But I would first like to say, I really think that the court needs to look at Henderson to see if it can even get to this issue. But the closest I could. I understood. And I have read it, I was going to say, one and a half times. But that doesn't make any sense. I get your point. I'm sure it's a full two. The closest I could come. Not 2%, though. Right. The closest I could come, with help from my colleagues, was something along the lines of Tomko. No reasonable judge would have done the same thing based on what appears on the record. In looking at the record objectively, I don't know. I can try to explain that a little bit. I realize I'm fumbling a little bit because it's not a complete fit. Because it still requires, I think the expectation is they believe that every time a judge holds a hearing pursuant to a pretrial motion, that the record must contain an explanation of why that hearing was held. I don't think that, let's put all this stuff aside and just be candid. Given these circumstances, I would love to argue this to a jury. This situation, just lay out the facts and ask a jury, do you think that the hearing was held for legitimate reasons? Or was it a pretext to cover a certain part of the anatomy because the Speedy Trial Act is looming overhead? Based upon this circumstantial evidence, the fact that neither attorney, neither side, requested a hearing. Evidence was offered at the second hearing, if you can call that evidence. They entered into evidence physical documentation of something that wasn't disputed, that the judge didn't even really need to be concerned about. And the very next day, these hearings are held. After the motion is filed, and then you have these further cases that I mentioned to you, the same legal issue, no hearings held. Do you think that that's enough to get to raise genuine concerns about whether or not the hearing was held for the purposes the judge said he was holding a hearing? Or whether or not the hearing was just held as a pretext? I think if you understand how a district court works and their caseload, I think that you could make a very strong argument that there was no pretext. Especially given the consequence of... A strong, believable argument. I'm sorry? A strong, believable argument. I think we understand how district courts work. Are you suggesting we don't understand how district courts... We've got district court judges up here. But I'm suggesting, Judge McKee was suggesting there would be an argument made to a jury, and I'm suggesting the jury would have to be informed of how a district court operates, that it doesn't just have one case, that it has multiple cases, and that it's constantly facing deadlines. You know, if this situation had arisen during the course of COVID with its shutdowns and the other effects, I think this panel might be looking at this in something of a different way. But it really happened post-COVID, did it not? It was. Post-COVID times. Yes. And therefore, there is this air of an unusual sequence of events in the listing of hearings. And I understand the difficulty in trying to craft a rule or suggest a rule, because I've thought about it myself. I just don't know how we do that, because I spent 18 years as a trial judge, 14 of it as a district judge. And frankly, I didn't particularly enjoy it sometimes when the Court of Appeals told me what to do. But that's the nature of the institution, that that happens from time to time. But if you're telling me that your office, you have not experienced similar occasions with this particular chambers, I accept that. Well, Your Honor, I want to be clear. I think that if you asked those questions with regard to each judge, we would have concerns. Because we want things to happen the way we want them to happen, right? That's the nature of litigation. Correct. So to say that we don't have any problems with this judge in terms of his timeliness, that would not be true. But it's also fairly- Appreciate your candor. It's fairly said about other judges as well, which I think is part of the problem here, is that when you isolate just one judge or even try to extrapolate and say, other judges, they were never having hearings on these motions, I bet those judges would be surprised to find out that their habits are being made into data to then challenge the legitimacy of their actions as district court judges and managers of their own dockets. One more question, and this was raised during the questions to your adversary. Does the government have some responsibility in situations like this to intervene, to prod, if you will, to remind whatever needs to be done to hasten the process of criminal charges where there had been such substantial lags? And there were. My very fastidious law clerk computed the times involved, not only because she's fastidious, but she wouldn't have trusted me to calculate them correctly in any event. But they were lengthy. So isn't there some, even if it's unwritten, just as a matter of good practice, I'm sure the FPD's office is keeping close track on the timing of these cases. Is there any similar practice within your office? We do keep track of them, Your Honor. And I cannot say that it's not part of our responsibility. We do. But again, each case stands on its own. And in this particular case, for example, one of these defendants indicated to the trial assistant, if I don't win my Second Amendment motion, I'm not going to trial. I'm going to enter a guilty plea. I mean, it's those types of relationships that we have to try to work around and make sure we're not encroaching on people's relationship with their client, we're encroaching on the court. But I can certainly relay the message that perhaps we should be doing a better job of that. But I will say, I don't think that the law supports the notion that it's exclusively resting with the government. I think the Supreme Court in law offers that. No, that wasn't suggested. No, that wasn't suggested. OK, I just want to make that clear. I think the defendant does have some obligations there.  And I appreciate your candor. Thank you. Thank you. I'm going to close with my usual, we ask that the court affirm. I usually make out with that. It's a mixed, as it should be. Thank you. You can always count on Judge McKee to ask the tough questions. OK, so I want to start with saying that this is a unique situation. That this is a rare case. And it's an unfortunate case, right? Where we have cases. Thank you, Your Honor. And we're not suggesting a bright line rule that would hamstring district courts in managing their dockets. Even the rule proposed by my friend on the other side, look at the record objectively, right? That's what all we're asking this court to do, is to look at the record objectively. Let's look at the circumstances surrounding the scheduling of the hearing. Is there evidence of pretext? Is this the judge's usual practice for this type of motion? And then did the parties request a hearing? We can look at those factors objectively to try to infer what was the goal of setting a hearing. And when you look at the record in this case, the only conclusion we can reach is that it was pretextual. And because of that, we would ask this court to dismiss with prejudice. The factors for dismissal with prejudice are outlined in the Speedy Trial Act. And when applying those factors, this court should dismiss with prejudice. Both defendants were deprived of the ability to receive earned time credits because of their lengthy pretrial incarceration. They were deprived client autonomy and their ability to decide if they wanted this delay for their pretrial motions. There's a serious risk of them over serving their sentences. Both of these gentlemen are no longer in federal custody. So re-prosecution at this point would have a serious impact on the administration of  We also need to consider the pattern of neglect here, as this court has recognized the Noble case, Mr. Edwards' case, Mr. Moore's case. There's no incentive here to manage a docket in a timely way. If we, to manage the docket in a timely way. So dismissal with prejudice sends a stronger message. And that's what the Supreme Court told us in Taylor. And so this court can decide the issue and remand with instructions to dismiss with prejudice. That's what this court did in Williams. And we ask for that same outcome here. Are you waiting for us to ask you something? I was ready for a question, but I have 30 seconds left. You can spend them somewhere else. Yeah. I'm sure you can take many better places to spend it. Yeah. But I do believe that in this situation with these specific facts for these cases, it's an unfortunate case where the hearing is pretextual. And if it's not pretextual in this situation, when would it be? And so we need...  I mean it. Thank you so much. Thank you. Thank you, counsel, for your arguments and your briefs. And we're going to ask that a transcript of this argument be prepared. And we'll have the government pay for it. If you could speak to the clerk about making arrangements, that'd be great. As long as there's not a government shutdown and there's no money to pay for it. Thank you, John. Thank you.